# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In the Motion of<br><br>**CHEVRON CORPORATION,**<br><br>Petitioner,<br><br>To Issue Subpoenas For the Taking of Depositions And the Production of Documents. | No. 11-cv-0395 (RWT) (CBD) |

**NOTICE**

Chevron Corporation ("Chevron") respectfully submits this notice to alert the Court of two developments:

**The Ecuadorian Appellate Decision.** Chevron hereby notifies the Court that on January 3, 2012, a panel of temporary, assistant judges presiding in the Provincial Court of Sucumbíos, Ecuador, affirmed in full the fraudulent $18.2 billion judgment rendered against Chevron by a permanent judge of the same court on February 14, 2011. *See* Ex. A.[1] The Ecuadorian appellate panel in its order ignored the extensive evidence of fraud before it, including evidence regarding the ghostwriting of the Ecuadorian lower court judgment. *See, e.g.*, Ex. A at 11-12.

This decision by the Ecuadorian appellate panel increases significantly the risk that the plaintiffs will seek to enforce the $18.2 billion judgment in jurisdictions around the globe, thus increasing Chevron's need for the discovery sought here. This discovery is also vital to

[1] A certified translation of the Ecuadorian appellate court's decision is submitted as Exhibit A to the Declaration of Anne Champion. All exhibits are to the Declaration of Anne Champion unless otherwise noted.

Chevron's case in the international arbitration *Chevron Corp. and Texaco Petroleum Co. v. the Republic of Ecuador*, PCA Case No. 2009-23.[2]

In addition to increasing the urgency of Chevron's application, aspects of the Ecuadorian appellate decision are directly relevant to the legal issues underlying Chevron's application before this Court. Page consistently has argued that this Court should not reach issues regarding the fraud perpetrated by the Lago Agrio Plaintiffs ("LAPs"), and their attorneys, representatives, and consultants, including Page, on the ground that such a determination lies solely in the hands of the Ecuadorian court. *See, e.g.*, Dkt. 15 at 6 (arguing that the Ecuadorian court's denial of Chevron's judgment fraud arguments "may very well be 'entitled to issue preclusive or claim preclusive effect given the surrounding circumstances'"); Dkt. 15 at 17 ("Both parties appealed the Judgment and those appeals are still pending before a three-judge panel in Ecuador. The panel's review is de novo and the parties are permitted to submit new evidence on appeal . . . . The panel is considering all of Chevron's claims that the Ecuadorian Judgment was procured by fraud including Chevron's recent disputed allegation that the Ecuadorian Plaintiffs and their counsel ghostwrote various passages of the Judgment."); *see also In re Chevron Corp. v. Page*, 11-CV-01942 (RWT) (D. Md.) Dkt. 10 at 28 (arguing that no court had addressed Chevron's ghostwriting evidence and "this precise issue is currently before the appellate court in Ecuador"). But the Ecuadorian appellate court held exactly the opposite, finding that it did not have the power to reach Chevron's allegations of fraud, although they are supported by an extensive

---

[2] The Second Circuit vacated the Southern District of New York's preliminary injunction restraining enforcement of the Ecuadorian judgment based on the LAPs stipulation not to enforce the judgment, but that stipulation was limited to not "commenc[ing] pre-judgment attachment or enforcement proceedings anywhere in the world prior to entry of a ruling by the [Ecuadorian appellate court] on the de novo appeal [then] pending before that court in Ecuador." Ex. B.

evidentiary record before the Ecuadorian court, because the issue of fraud is being considered by courts in the United States. The Ecuadorian court held: "Mention is also made of fraud and corruption of plaintiffs, counsel and representatives, a matter to which this Division should not refer at all, except to let it be emphasized that the same accusations are pending resolution before authorities of the United States of America due to a complaint that has been filed by . . . Chevron, under what is known as the RICO act, and this Division has no competence to rule on the conduct of counsel, experts or other officials or administrators and auxiliaries of justice, if that were the case." Ex. A at 10. In so doing, the Ecuadorian appellate court ignored the vast record of wrongdoing before it, including the evidence submitted by Chevron showing that the judgment was ghostwritten by the LAPs' representatives, using the "Fusion Memo" that Page authored. Dkt. 13-67 at 28; Dkt. 13-5 at 45; *see also* Dkt. 13-55; Dkt. 13-56; *Chevron Corp. v. Page*, 11-cv-01942-DKC Dkt. 1-2 at 10–11 (D. Md. Jul. 15, 2011).

**Page's Improper Conduct.** Since briefing closed on Chevron's petition, Respondent Page has, in the name of the LAPs, sent threatening letters to three witnesses associated with Chevron, copying their employers, including two witnesses from whom the Republic of Ecuador is seeking discovery in ongoing Section 1782 proceedings. *See* Ex. C. Page contacted these witnesses directly although he is aware that they are experts retained by Chevron in the Ecuadorian proceedings and represented by undersigned counsel for Chevron in pending 1782 proceedings. The intent of Page's letters appears to be to use misstatements and false accusations to intimidate and harass these witnesses to alter their testimony in the Ecuadorian proceeding, ongoing 1782 proceedings and the international arbitration. As set forth in Chevron's response to Page's letters, Page's conduct violates ethical rules and also constitutes possible violation of federal criminal laws preventing witness tampering. Beyond showing

Page's misconduct, these letters demonstrate that Page remains actively involved in the Lago Agrio litigation and the arbitration, and is in possession of evidence relevant not only to the LAPs' fraud in the Lago Agrio litigation, but to additional improper activity on behalf of the LAPs.

* * *

The Ecuadorian appellate court's abdication of its responsibility to address the extensive evidentiary record of fraud and manipulation of the Lago Agrio proceedings underscores Chevron's need for discovery from Page for presentation both in potential further appeals in Ecuador and before the international arbitration tribunal. Chevron respectfully requests that this Court consider this information and Page's recent conduct when ruling on Chevron's petition to take discovery from Aaron Page pursuant to 28 U.S.C. § 1782.

Dated: January 11, 2012

Respectfully submitted,

Peter E. Seley
Peter E. Seley
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.955.9594

*Attorneys for Chevron Corporation*

*Of Counsel:*

Randy M. Mastro, Esq. (not admitted to District of Maryland)
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Tel: (212) 351-4000
Fax: (212) 351-4035
Email: rmastro@gibsondunn.com

Andrea E. Neuman, Esq. (not admitted to District of Maryland)
GIBSON, DUNN & CRUTCHER, LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Tel: (949) 451-3937
Fax: (949) 451-4220
Email: ANeuman@gibsondunn.com